UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT WARNER, | ) | CASE NO. 1:21-CV-1885 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC., *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Before the Court is Defendants Amazon.com, Inc.'s and Amazon.com Services, LLC's ("Amazon" or "Defendants") motion for summary judgment. (Doc. 75.) Plaintiff Robert Warner ("Warner" or "Plaintiff") opposed (Doc. 76) and Defendants filed a reply (Doc. 78). For the reasons below, the motion is GRANTED.

I.    BACKGROUND

A.    Factual Background

In November 2019, Warner worked as a Seasonal Whole Foods Shopper for Amazon.com, Inc. (Doc. 75-3 at 898.)[1] In February 2020, he transferred to a warehouse in Euclid, Ohio and began his employment at Defendant Amazon.com Services, LLC. (*Id.* at 901.) There, Warner worked as a Fulfillment Associate. (*Id.*) Fulfillment Associates at Amazon could be assigned to various job paths. (Doc. 75-4 at 943.) For instance, a Fulfillment Associate could be assigned "Pack Singles" where employees pick and prepare for packaging single items for orders. (*Id.*) A Fulfillment Associate could also be assigned "Pack Flow" where employees are assigned multi-item orders which are prepared for packaging and shipping. (Doc. 75-1 at 826.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

And a Fulfillment Associate working in Pack Flow may be assigned to "Problem Solve" where employees are tasked with sorting and fixing orders originally picked by a Pack Flow employee who identified an issue with an order.  (Doc. 75-2 at 869.)

When Warner began working at the Euclid warehouse as a Fulfillment Associate, Amazon assigned him to Pack Singles.  (*Id.* at 855.)  The crux of this lawsuit began a few months later on June 16, 2020.  That day, the Euclid warehouse observed a moment of silence in memory of George Floyd.  (Doc. 75-3 at 917.)  Warner did not want to participate in the moment of silence and ultimately left work early that day.  (Doc. 75-1 at 825.)  Warner argues in this lawsuit he has since suffered discrimination and retaliation because of his refusal to participate in the moment of silence and subsequent reporting to the Equal Employment Opportunity Commission ("EEOC") and other related activities.

On July 19, 2020—per his request—Amazon cross-trained Warner and began assigning him to Pack Flow.  (Doc. 75-3 at 902.)  This included work in Problem Solve.  After a couple of weeks in Pack Flow, Warner alleges he was "transferred" back to Pack Singles.  (*Id.* at 863.)  Warner alleges a supervisor told him because he was cross-trained, they needed to assign him to other job paths occasionally.  (*Id.*)  Amazon alleges Fulfillment Associate employees are freely moved around from Pack Singles, Pack Flow, and Problem Solve based on business needs and that no Fulfillment Associate was assigned to any particular picking job unless they were not trained in a job path.  (Doc. 75-1 at 828; Doc. 75-4 at 943-44.)

Regardless, Warner claims he was not allowed to work in Pack Flow and was not able to continue working in his preferred position in Problem Solve.  (Doc. 76 at 947-48.)  Then, on October 15, 2020, Warner filed a Charge of Discrimination with the EEOC and the Ohio Civil Rights Commission.  (Doc. 75-3 at 917.)  His complaint included the following:

> On or about June 16, 2020, I was forced to participate in a moment of silence in memory of George Floyd.  When I refused to participate in the moment of silence, I was harassed as my supervisor walked me up and down the aisle asking me to be quiet.  I passed about twenty Black co-workers during the moment of silence.  As we walked, I was continually asked to hush.  In retaliation to me not participating in the eight-minute moment of silence, I was clocked out by someone else.  I contacted Human Resources immediately about this incident.  On or about June 19, 2020, Human Resources responded to me saying that CTK Employee Service did this and there was nothing they could do about it.  I applied for a transfer to the Pack Flow department on or about July 25, 2020.  Two weeks later, I was transferred out of the department.  I believe I was transferred out of the department due to my supervisor being Black.

(*Id.*)  Warner did not tell anyone at Amazon about his EEOC complaint except for a single colleague who was a peer.  (Doc. 75-2 at 865.)  Shortly after he filed his EEOC complaint, Amazon began assigning Warner back to Pack Flow.  (*Id.* at 866-67.)  For approximately one year, Warner was assigned Pack Flow and would work in Problem Solve but was periodically assigned Pack Singles.  (Doc. 76 at 949.)

On August 30, 2021, Warner requested a notice of Right to Sue from the EEOC stemming from the June 16, 2020 incident.  (Doc. 76-33.)  That same day, he received verbal coaching from his manager, Richard Perez, because he refused to go to his assigned work area and was disruptive.  (Doc. 75-3 at 921.)  Amazon also issued a warning to him on October 27, 2021, for failure to meet objective productivity standards.  (Doc. 75-3 at 911.)

On October 30, 2021, Warner filed a second charge of discrimination with the EEOC stemming from the verbal warning incident and failure to meet objective productivity standards.  (Doc. 75-1 at 827-28.)  He alleged Amazon was retaliating against him for filing the initial EEOC charge by issuing the verbal coaching and warning.  (*Id.*)  Warner also alleged he was no longer assigned to Pack Flow or Problem Solve after these incidents or worked so on rare occasions.  (Doc. 75-2 at 870.)

In April 2022, a dispute arose between Warner and Amazon leading to his ultimate separation from the company. The dispute began on April 19, 2022, after Warner received a notification from Amazon's human resources systems which tracks time off. (Doc. 75-3 at 928.) Per Amazon's policies, if an employee exceeds their use of UPT and their balance is depleted past zero, the employee is subject to termination. (*Id.* at 904.) On April 19, 2022, Warner received a notice from human resources that he again exceeded his available UPT. (*Id.* at 928.) He disputed the accuracy of Amazon's time records and stated that he worked a full shift which was not accounted for appropriately. (*Id.*) On April 21, 2022, human resources asked Warner to speak with them directly. (*Id.*) By April 23, 2022, Warner had not yet spoken with human resources. (Doc. 75-2 at 874.) That same day, he received an email stating Amazon was terminating his employment due to absenteeism. (Doc. 75-3 at 930.)

On April 29, 2022, Amazon contacted Warner. (*Id.* at 931.) Amazon explained to him his employment with Amazon was still active because the termination notice was in error and requested to speak with him. (*Id.*) In response, Warner requested to be paid for the time he missed and requested 20 hours of UPT be applied to his account. (*Id.*) Amazon told Warner they would pay him for the 40 hours of missed work, but that Amazon would not credit him 20 hours of UPT. (*Id.*) Amazon told Warner he could return to work May 1, 2022. (*Id.*) Also on April 29, 2022, but separately, Warner received an email with his original termination letter. (*Id.* at 933.) After a follow-up call for clarification on the letter, he did not respond to the April 29, 2022 email. (*Id.*)

Amazon emailed Warner on May 1, 2022 to ask whether he would come to his scheduled shift. (*Id.* at 935.) He did not respond, nor did he work that day. On May 4, 2022, for the avoidance of doubt, Amazon sent Warner an offer of reinstatement, effective May 1, 2022, which

would restore him to his previous position with the same benefits and pay.  (*Id.* at 936.)  The offer was conditional on him coming to work by May 15, 2022.  (*Id.*)

By May 20, 2022, Warner did not respond to the email nor return to work.  (*Id.* at 938.)  Amazon emailed him on May 20, 2022, indicating that since he did not respond to the email or come into work, he voluntarily resigned.  (*Id.*)  Amazon also stated that if this was an error, he could contact Amazon by May 27, 2022.  Otherwise, Amazon would assume he resigned effective May 31, 2022.  (*Id.*)  Warner responded and contended that Amazon's offer was really part of a scheme to force him to transfer to another department.  (*Id.* at 937.)  Amazon clarified to him the offer would put him in the same role he was previously working in.  (*Id.* at 938.)  Based on his response, Amazon accepted his resignation effective May 31, 2022.  (*Id.*)

**B.     Procedural History**

Plaintiff filed his original complaint on October 4, 2021.  (Doc. 1.)  He asserted four theories of liability: (1) a claim under 18 U.S.C. § 2385, a statute that criminalizes conduct aimed at overthrowing the United States government; (2) constitutional claims under 42 U.S.C. § 1983; (3) Title VII discrimination; and (4) Title VII retaliation.  (*Id.*)  Defendants answered and moved to dismiss the complaint.  (Docs. 5, 6.)  Plaintiff filed an amended complaint on March 6, 2022.  (Doc. 8.)  Defendants again answered and moved to dismiss.  (Docs. 14, 15.)

The Court granted in part and denied in part Defendants' motion.  (Doc. 34.)  Following the Court's order, only the Title VII retaliation claim remained.  (*Id.* at 355.)  Plaintiff moved to file a second amended complaint which pleaded additional theories of liability—including pre-EEOC charge conduct for the Title VII claims—and revival of some claims previously dismissed.  (Doc. 36.)  The Court granted in part and denied in part Plaintiff's motion, allowing

Plaintiff to file the second amended complaint but construing it to include only a Title VII retaliation claim for post-EEOC charge conduct.  (Doc. 48.)

On September 14, 2023, Plaintiff filed a notice of filing bankruptcy.  (Doc. 65.)  As a result, the Court issued a stay the same day.  (Non-Document Order (Sept. 14, 2023).)  On February 20, 2024, Plaintiff filed a notice reporting the bankruptcy case was resolved.  (Doc. 69.)  The Court lifted the stay and the parties proceeded with this litigation.

On July 1, 2024, Defendants moved for summary judgment.  (Doc. 75.)  Plaintiff opposed (Doc. 76) and Defendants replied (Doc. 78).

## II.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted).  A "material" fact is one that "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "[A] genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Queen v. City of Bowling Green*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted).  On summary judgment, the

inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005). A party asserting or disputing a fact must cite evidence in the record or show the record establishes either the absence or the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c) & (e). Rule 56 further provides "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation and citation omitted). The Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.*

### III.   ANALYSIS

"Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014) (citing 42 U.S.C. § 2000e-3(a)). "[A] Title VII retaliation claim can be established 'either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation.'" *Id.* (quoting *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)). Where a claim is premised on circumstantial evidence,

as it is here, a court analyzes the plaintiff's claims under the burden-shifting framework of *McDonnell Douglas*. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see also Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

"Under *McDonnell Douglas*, Plaintiff bears the initial burden to establish a *prima facie* case of retaliation." *Laster*, 746 F.3d at 730. If Plaintiff can show a *prima facie* case, "'the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reasons for its actions. If the defendant satisfies its burden of production, the burden shifts back' to Plaintiff to demonstrate that Defendants' proffered reason was not the true reason for the employment decision." *Id.* (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.*

When faced with a properly supported motion for summary judgment, a plaintiff's failure to establish a *prima facie* case of retaliation is fatal to his claim. *See Yao v. Oakland Univ.*, No. 22-1980, 2024 WL 209448, 2024 U.S. App. LEXIS 1317, at *7 (6th Cir. Jan. 19, 2024). A plaintiff must come forth with evidence to support a *prima facie* case—"subjective and vague allegations" are not enough. *See Hartsel v. Keys*, 87 F.3d 795, 804 (6th Cir. 1996). Courts need not assess steps two or three of the *McDonnell Douglas* framework if part one—the *prima facie* case—is not established. *Yao*, 2024 WL 209448, 2024 U.S. App. LEXIS 1317, at *7.

A. **_Prima Facie_ Case**

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse'

to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster*, 746 F.3d at 730 (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)). The parties do not dispute Plaintiff satisfied the first element by engaging in a protected activity. (Doc. 75-1 at 834.) All other elements of the *prima facie* case are disputed.

### 1. Knowledge of Protected Activity

To establish the second element, a plaintiff must "produce evidence sufficient to establish that the officials taking the adverse employment action knew of his protected activity." *Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002). A plaintiff may prove knowledge through direct evidence but may also survive "summary judgment by producing circumstantial evidence to establish this element of her claim." *Id.* at 552-53. In many cases "the adverse action will be taken by the same supervisor to whom the plaintiff has made complaints in the past." *Id.* But in other cases, "sufficient circumstantial evidence that [a plaintiff's] supervisor was aware of his protected activity" is enough to establish this element. *Id.* (citing *Allen v. Mich. Dep't of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999)).

Plaintiff's claim fails because he has not produced any evidence which establishes anyone at Amazon that took any alleged adverse employment action knew of Plaintiff's protected activity. Plaintiff alleges four actions give rise to his retaliation claim: (1) transfers between Pack Flow and Pack Singles; (2) inability to work in Problem Solve; (3) verbal coaching and warning regarding productivity; and (4) his termination. Plaintiff did not address whether any one at Amazon who took these actions knew of his protected activity. In fact, Plaintiff failed to address this element altogether. Once a party moves for summary judgment and presents evidence of the lack of a dispute of a material fact, the opposing party must cite specific evidence

that demonstrates a dispute of a material fact.  *See* Fed. R. Civ. P. 56(c) & (e).  The Court has no obligation to sift through the record to find one.  *Street*, 886 F.2d at 1479-80.

In reviewing the briefing and materials cited therein, there is neither testimony nor a record of any supervisor's knowledge of Plaintiff's protected activity.  On the contrary, Plaintiff admitted in deposition that he *did not* tell anyone at Amazon about his EEOC complaint except for a single peer.  (Doc. 75-2 at 865.)

For this reason, Warner has failed to establish the second element of his *prima facie* case.

### 2. Materially Adverse Action

Even if Plaintiff could demonstrate knowledge, his claim nonetheless fails because he cannot show a materially adverse action.

"To establish the third element of the *prima facie* Title VII retaliation claim, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Laster*, 746 F.3d at 731 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).  This analysis is highly fact-specific and "depends on a constellation of surrounding circumstances, expectations, and relationships[.]"  *Id.*

Even in the retaliation context, where the more liberal definition of materially adverse action is used, Plaintiff has not shown his assignments to various roles as a Fulfillment Associate were materially adverse actions.  Amazon submitted a declaration from Richard Perez, an area manager at Amazon's Euclid fulfillment center.  (Doc. 75-4.)  In that declaration, Perez explained Fulfillment Associates cross-trained in various roles could be assigned to any of those roles depending on business needs.  (*Id.*)  Warner has produced no evidence to dispute this fact or in

any way contradict Perez's declaration. He does not dispute his own reassignments were to roles within the scope of a Fulfillment Associate's job duties. He also does not provide evidence that other employees received more favorable assignments.

Notably, Warner admitted in opposition other cross-trained employees were routinely assigned to Pack Flow, Pack Singles, and Problem Solve roles. (Doc. 76 at 951-52.) Notwithstanding this admission, Warner urges the Court to conclude Amazon's reassignments were adverse because he did not wish to perform certain of the Fulfillment Associate roles to which he was assigned or, at least, not as often. But Warner's preferences as to assignments and frequency of reassignments does not establish that a "reasonable employee" would have viewed his Fulfillment Associate assignments as "materially adverse" such that any other reasonable employee would feel dissuaded from engaging in the protected activity. *See Logan v. MGM Grand Detroit Casino*, No. 21-1149, 2021 WL 6932348, 2021 U.S. App. LEXIS 37973, at *16 (6th Cir. Dec. 22, 2021) (affirming summary judgment on retaliation claim where court found no material adverse action because "assignment of job duties" that are within the employee's job description "does not constitute an adverse action").

Warner also argues the verbal coaching he received and a written warning were material adverse actions. Warner received verbal coaching after a verbal altercation with his manager when he did not want to go to his assigned role on a particular day. (Doc. 75-2 at 862.) He also received a written warning for falling below Amazon's productivity metrics. (Doc. 75-3 at 911.) Other than suggesting the verbal coaching and written warning were associated with his protected activities, Plaintiff does not provide any evidence these events were material adverse actions. His own admissions resolve this point. Warner testified that he argued with his manager. (Doc. 75-2 at 862.) And Warner does not dispute his productivity metrics were below

Amazon's standards.  (Doc. 76 at 951.)  These acknowledgments show the alleged material adverse actions were taken within the normal course of employment activities, rather than related to any protected activity.  *See Moore v. Abbot Labs.*, 780 F.Supp.2d 600, 625 (S.D. Ohio 2011) (determining that negative performance evaluation was not a material adverse employment action).  A reasonable employee would not be dissuaded from filing a charge of discrimination based on activities taken in the normal course of employment that are well-grounded in fact.  *Russell v. Ohio Dep't of Admin. Servs.*, 302 F. App'x 386, 394 (6th Cir. 2008) ("the act of filing an EEOC claim does not immunize [a plaintiff] from all negative feedback in [the plaintiff's] workplace.").

Finally, Warner argues his alleged termination was a material adverse action.  True, termination is a material adverse action.  *See Goodsite v. Norfolk S. Ry. Co.*, 573 F. App'x 572, 583 (6th Cir. 2014) (holding that a discharge "obviously is a materially adverse action" for purposes of retaliation in Title VII case).  But a voluntary resignation is not.  *See Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 567 (6th Cir. 2012).  It is undisputed that Amazon sent Plaintiff an email terminating his employment because of absenteeism.  (Doc. 75-3 at 930.)  But it is also undisputed that Amazon corrected itself.  On April 29, 2021, Amazon informed Warner he was still an employee and could continue working in the exact same position to which he was previously assigned.  (*Id.* at 932.)  While Plaintiff construed Amazon's communications as a transfer to a different position, Amazon articulated to Plaintiff he would be in the same position as before as if the erroneous termination notification never occurred.  (*Id.* at 937.)  Amazon offered to pay Plaintiff for a full week of missed work based on the miscommunication.  (*Id.* at 932.)  Even though the communication from Amazon contains the language "internal transfer," Amazon's communications specifically told Plaintiff there would be

no change in employment status or position.  (*Id.*)  Instead of continuing his employment, Plaintiff never returned to work.  (*Id.* at 937.)  Viewing this timeline of events in Plaintiff's favor, Plaintiff's decision not to return to work was made after being informed that he would return to his prior position.  Plaintiff was not terminated by Amazon, as he urges.  Plaintiff resigned.

In addition to the above timeline, Amazon also presented the Court with an employment application Warner submitted to Marc Glassman Inc. after his relationship with Amazon ended. (*Id.* at 890.)  In that application, Warner stated the "reason for leaving" his employment with Amazon was that he "resigned."  (*Id.*)  Courts have found this type of evidence persuasive to show an employee resigned rather than was terminated.  *See Ellis v. Prospect Airport Servs.*, No. 17-13852, 2019 WL 2218819, 2019 U.S. Dist. LEXIS 54305, at *24 (E.D. Mich. Jan. 25, 2009), *report and recommendation adopted*, No. 17-13852, 2019 WL 1417163, 2019 U.S. Dist. LEXIS 53913 (E.D. Mich. Mar. 29, 2019) (finding no retaliation as a matter of law because plaintiff voluntarily resigned, as evidence by a settlement agreement he signed as part of his departure which stated he voluntarily resigned).

In sum, none of the actions Plaintiff complains of is a materially adverse action.

### 3. Causation

"To prove a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the defendant took the adverse employment action because the plaintiff engaged in protected activity."  *Bledsoe v. Tenn. Valley Auth. Bd. of Directors*, 42 F.4th 568, 588 (6th Cir. 2022) (quotations and citations omitted).  In the Title VII retaliation context, this requires a showing of but-for causation.  *Laster*, 746 F.3d at 731.

For the same reasons described above, Plaintiff has not established that his protected activities caused any of the alleged materially adverse actions.  As it relates the alleged transfers,

Plaintiff was trained first in Pack Singles.  (Doc. 75-3 at 901.)  Then after his complaint to the EEOC, he was cross-trained in his preferred assignment, Pack Flow and Problem Solve.  (*Id.* at 902.)  After being cross-trained, through Perez's unrebutted declaration, Amazon explained Plaintiff could be assigned to various roles as a Fulfillment Associate.  (Doc. 75-4.)  Plaintiff acknowledged his fellow Fulfillment Associates were assigned to various roles in this manner.  (Doc. 76 at 951-52.)  Thus, the transfers were not caused by his protected activity, but instead, were part of his normal job duties.

As to the verbal coaching and written warning, Plaintiff has not presented any evidence other than his speculation that the two are connected to his protected activities.  But "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of [retaliation]."  *Pittington v. Great Smokey Mountain Lumberjack Feud, LLC*, 213 F.Supp.3d 951, 960 (E.D. Tenn. 2016) (quoting *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986)).  Plaintiff even acknowledged that both the verbal coaching and written warning were warranted under Amazon's policies due to Plaintiff's argument with a manager and failure to meet productivity standards.  (Doc. 75-2 at 862; Doc. 76 at 951.)

Lastly, Plaintiff's "termination" came months or years after any protected activity and was prompted by a notice of Plaintiff's alleged absenteeism.  Plaintiff presented no evidence to connect his termination with his protected activities.  Instead, he merely focused on whether he was terminated or resigned.  But even if the Court were to find he was terminated, Plaintiff presented no evidence that termination was caused by his protected activities.  In contrast, Amazon submitted time sheets and email communications with Plaintiff regarding this incident which show his termination—if it was one—had nothing to do with his protected activities.

Plaintiff has not shouldered his threshold burden of establishing a *prima facie* case his protected activities caused any materially adverse action. *See Dean-Lis v. McHugh*, 598 F. App'x 412, 415 (6th Cir. 2015) (affirming summary judgment because plaintiff failed to establish causation for *prima facie* case where plaintiff relied only on "sheer speculation" and timing).

### C. Warner's Motions to Authenticate Exhibits

In his opposition to Amazon's motion for summary judgment, Warner did not properly authenticate the exhibits cited in support. Amazon noted this in reply. (Doc. 78 at 1060.) Recognizing the strong preference that matters be heard and resolved on the merits, and because Warner corrected his error expeditiously (Docs. 79, 80), Warner's request for leave to submit his declaration to authenticate exhibits is granted.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 75) is GRANTED.

**IT IS SO ORDERED.**

Date: May 16, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE